# CHARLESTON.

### E. W. Horton *v.* E. T. Tyree.

### (No. 5764)

### Submitted October 20, 1926.   Decided November 9, 1926.

1. ABATEMENT AND REVIVAL—LIMITATION OF ACTIONS—*Fraud and Deceit, Inducing Person to Part With Property, Constitutes Direct Injury to Property, and Limitation of Actions for Injuries to Property Applies; Action for Fraud and Deceit Inducing Person to Part With Property is One for Direct Injury to Property, Which Survives Against Personal representative (Code, c. 85, § 20, chapter 104, § 12).*

   Where one practices upon another fraud and deceit inducing the latter to part with his property, a direct injury is done to property, and the statute of limitations in reference to actions for injuries to property applies. In such case an action may be brought under Section 12, Chapter 104, Code, within five years next after the right to bring the same shall have accrued. *Mylius* v. *Arnold,* pt. 1, syllabus, 99 W. Va. 341.   (p. 476).

2. FRAUD—*Action Lies for False Representation of Fact, Made With Intent and Knowledge of Falsity, to One Ignorant Acting Thereon to His Injury.*

An action for false representations may be maintained against a party who makes a false representation of a fact with knowledge of its falsity, to one who is ignorant of the fendant was in any way benefited by the making of such person to whom it is made acts upon it, and by so doing who was benefited. (p. 481).

3. SAME—*To Maintain Action for False Representation, it is Not Necessary to Show Defendant Was Benefitted.*

It is not necessary, in order to maintain such action to recover damages for false representation, to show that the defendant was in any way benefited by the making of such representation, or that he was in collusion with someone else who was benefited. (p. 481).

Error to Circuit Court, Mercer County.

Trespass on the case by E. W. Horton against E. T. Tyree. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*John R. Pendleton, Russell S. Ritz* and *George Richardson, Jr.,* for plaintiff in error.

*Strother, Sale, Curd & Tucker, Ross & Ross* and *French, Easley & Easley,* for defendant in error.

WOODS, JUDGE:

This is an action of trespass on the case to recover for damages sustained in the purchase of certain coal stock, at the instance and on the false and fraudulent representations of the defendant. After a demurrer to the declaration was overruled, the defendant was permitted, over the objection of the plaintiff, to file a special plea that the cause of action did not accrue within one year next before the commencement of plaintiff's action. Plaintiff entered his demurrer on which he stood, filing no replication to the plea. The circuit court overruled the demurrer, and thereupon entered judgment on the plea in favor of the defendant.

The declaration alleges in substance that the plaintiff was a customer of the banking institution of which defendant, as

vice-president, was in active charge, and had been accustomed to consulting defendant in regard to his financial affairs and reposed great confidence and trust in the advice and instructions given by the defendant; that some time prior to the grievances alleged, defendant had acquired a boundary of coal land, or a considerable interest therein, and had conveyed it to the Tyree Coal Land Company, Inc., of which defendant was president; that the seams of coal on said land were thin and had not been developed successfully for coal mining purposes; that Tyree Coal Land Company sold said tract to C. T. Benton, who conveyed it to the Mountain State Coal Corporation, and that the Mountain State Coal Corporation had executed a deed of trust upon said property to secure the Tyree Coal Land Company, Inc., in the sum of $211,-750.00, with interest thereon, evidenced by bonds, and representing deferred installments of purchase money due for the said property. The declaration further alleges that a short time later plaintiff was hailed by defendant Tyree as he (plaintiff) was leaving defendant's bank, and was introduced to C. T. Benton and B. M. Long, and that defendant stated to plaintiff "that Benton was the owner of a large tract of coal land, which he had bought cheap"; that engineers' reports based upon careful surveys of the same showed the same to be worth six for one what the said Benton had paid for the same; that the said Benton had organized a corporation and was selling a small amount of the stock in the same for the purpose of equipping a plant for coal mining operations upon said boundary of land, and would like to sell to said plaintiff some of that stock; that plaintiff stated that he had no money with which to buy stock, to which defendant answered "We will take your note and carry you as long as you like"; that plaintiff was led by the said defendant into a discussion with the said Benton of the coal business and the affairs of the company in which it was proposed that this plaintiff purchase stock; that defendant further stated that he "had just purchased $20,000.00 worth of the said stock, and that he would not at that time take $110.00 per share for the stock" so purchased by him; that the defendant well knew that said

defendant had purchased 100 shares of the capital stock of said corporation for which he had given his negotiable note for a sum not in excess of $10,000.00, and had received for the same 200 shares of the capital stock of said Mountain State Coal Corporation, the additional 100 shares being bonus stock; that defendant further represented that all of the output from the mine then operating upon the boundary of land owned by the said Mountain State Coal Corporation for the year 1921 had been sold for the sum of $6.50 per ton, and that the investment would pay by reason of the contract for the sale of the tonnage aforesaid at least twenty-five per cent during the year 1921; plaintiff was shown by the said Benton a certificate for eighty-nine shares of the capital stock of said Mountain State Coal Corporation, issued in the name of the said Benton, and was given a statement written by the said Benton in the presence of the defendant and signed by said Benton, to the effect that if this plaintiff would purchase the said eighty-nine shares of stock and give therefor his note to the said Benton for $8,900.00, payable ninety days after date, and was not at the maturity date of said note satisfied with his purchase of said stock, then the said Benton would cancel the note given by this plaintiff for the said stock and would re-purchase the stock from the plaintiff at the sum of $110.00 per share; that relying upon the representations made by defendant, and without any further investigation, he entered into this agreement with Benton and purchased the said stock, giving his note for $8,900.00, payable to C. T. Benton ninety days after date, at the Flat Top National Bank, which note was discounted by the said defendant for said bank and the proceeds paid to Benton; that the representations made by the said Tyree were false, and that the said Tyree knew, or by proper inquiry could have ascertained that the said representations were not true, and that the said representations were made for the purpose of inducing the plaintiff to purchase the said stock; that the defendant knew that the eighty-nine shares of stock which plaintiff bought from Benton was bonus stock issued by the Mountain State Coal Corporation to Benton, and not treasury stock of the company. And the

declaration further alleges that after the deal had been closed and he had purchased the stock from Benton he returned to the bank and consulted defendant in regard to the financial standing of Benton, and was informed that investigation had shown him to be worth at least a quarter of a million dollars; that shortly thereafter the affairs of the Mountain State Coal Corporation became involved, and that plaintiff learning thereof again went to the defendant, who told him that he would look after plaintiff's interest, and that at that time the attorney for the bank was making an investigation of the affairs of the said corporation; that when the $8,900.00 note became due the plaintiff desired to repudiate his purchase of said stock and to have the said stock repurchased by Benton and the note cancelled in accordance with the agreement with Benton; that defendant representing himself as looking after the interests of plaintiff, induced plaintiff to execute and deliver to the bank a renewal note for the $8,900.00, and that sometime afterwards the property of the Mountain State Coal Corporation was sold under deed of trust securing the bonds given to secure the Tyree Coal Land Company; that said defendant owned $39,173.81 worth of said bonds, and that at the sale of the property it was purchased by defendant and two other parties for the sum of $25,000.00, and was conveyed to Dry Fork Smokeless Coal Land Corporation, in which the defendant was a large stockholder and a director.

Is the cause of action set out in the pleadings of such a nature as would survive to or against the personal representatives of either the plaintiff or defendant? If it is, then the statute of limitations in reference to actions for injuries to property applies, and the plaintiff is entitled to bring his action under §12, chapter 104, Code, within five years next after the right to bring the same shall have accrued.

Plaintiff claims that he has sustained an injury to property, and bases his action upon §20, chapter 85, Code, which provides: ''An action of trespass or trespass on the case may be maintained by or against a personal representative for the taking or carrying away of any goods, or for the waste or destruction of or *damage to, any estate of or by his decedent.*''

This Court has held that the above statute does not apply to indirect damages to property, such as where property is damaged as a consequence of a malicious prosecution, or where a person leaves the state on account of threats against his person and allows his property to remain behind and to deteriorate. *Woodford* v. *McDaniel,* 73 W. Va. 736; *Kerchanski* v. *Smith,* 93 W. Va. 310; *Vencill* v. *Flynn Lumber Co.,* 94 W. Va. 396; *Mumpower* v. *City of Bristol,* 94 Va. 737. In the instant case, however, the plaintiff relies upon fraud and deceit on the part of the defendant in knowingly making false and fraudulent representations upon which plaintiff relied and acted, and from which action his estate was damaged to the extent of $8,900.00. But is the damage complained of the direct result of defendant's deceit? In 37 Corpus Juris 779, we find the statement: ''An action for fraud and deceit, practiced upon another whereby he is induced to incur financial loss, is ordinarily an action for injury to 'property', and not for an injury to the 'person'.'' And in 17 Ruling Case Law 735, §98, the proposition is laid down: ''Where one practices upon another fraud and deceit, whereby the latter is induced to accept property in settlement of a debt much greater in amount than the value of the property, an injury is done to property, and not to the person, and the statute of limitations in reference to actions for injuries to property applies.'' This latter statement is supported by the case of *Crawford* v. *Crawford,* 134 Ga. 114. 19 Anno. Cas. 932, 28 L. R. A. (N. S.) 353. In view of the foregoing principle, our Court, in *Mylius* v. *Arnold,* 99 W. Va. 341, held: ''Where one practices upon another fraud and deceit inducing the latter to part with his property, a direct injury is done to property, and the statute of limitations in reference to actions for injuries to property applies.''

But it is urged by counsel for defendant that a cause of action for fraud and deceit does not, under the common law or by statute, survive against a personal representative, unless as a result thereof property is acquired by the wrongdoer, which inures to his benefit or enhances the value of the estate in the hands of his personal representative. Does the right of

survival here depend upon a benefit? While the maxim "*actio personalis moritur cum persona*" obtained at common law, the courts very early distinguished between the surviving of remedies, upon the cause of action, and the form of action. This distinction is clearly pointed out by Lord Mansfield in the well considered case of *Hambly* v. *Trott*, 1 Cowper 376: "Where besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor. * * * So far as the tort goes, an executor shall not be liable and therefore it is that all public and all private crimes die with the offender, and the executor is not chargeable, but so far as the act of the offender is beneficial, his assets ought to be answerable, and his executor shall therefore be charged." See: *Cravath* v. *Plympton*, 13 Mass. 454; *Wilbur* v. *Gilmore*, 21 Pick. 252; *Osborn* v. *Bell*, 5 *Denio* (N. Y.) 370; *Powell* v. *Rees*, 7 Ad. & El. 426; *Foster* v. *Stewart*, 3 Mau. & Sel. 191. In other words, in the absence of statute, a right of action for a wrong done would not survive against the representatives of the wrong-doer, if he or his estate received no benefit from the wrong. However, the force of the maxim "*actio personalis moritur cum persona*" has been much restricted and limited, in both England and this country, by various statutes conferring the right to sue upon the personal representatives for injuries done to the property of the deceased in his life time, whereby it has become less beneficial to the representative, in the same manner as the decedent himself might have done. And under our statute (§20, Ch. 85, Code) trespass or case may be maintained for *damage to any estate of his decedent,* providing the injury is direct. The test of survival depends upon the question of whether the injury was direct, and not whether the defendant benefitted.

Is the declaration defective in that it failed to aver that the defendant benefited by the transaction? The gravamen of the charge here is that the plaintiff has been deceived to his hurt; not that the defendant has gained an advantage. The courts almost uniformly hold that an action for false representations, called also an action of or for deceit, may be

maintained against a party who makes a false representation of a fact with knowledge of its falsity, to one who is ignorant of the falsity, with intent that it shall be acted upon, where the person to whom it is made acts upon it, and by so doing suffers injury. *Dickinson* v. *Railroad Company,* 7 W. Va. 390; *Osborne* v. *Holt,* 92 W. Va. 410; 27 C. J. 30-37.; *Pasley* v. *Freeman,* 3 Term Rep. 51; *Taylor* v. *Ashton,* 11 Mees. & W. 401; *Ormrod* v. *Ruth,* 14 Mees. & W. 651; Biglow on Fraud, 466; *Marshall* v. *Buchanan,* 35 Cal. 264; *Williams* v. *McFadden,* 23 Fla. 143; *Merwin* v. *Arbuckle,* 81 Ill. 501; *Hiner* v. *Richter,* 51 Ill. 299; *Stanhope* v. *Swafford,* 80 Iowa 45; *Rhoda* v. *Annis,* 75 Me. 17; *Buschman* v. *Codd,* 52 Md. 202; *McAleer* v. *Horsey,* 35 Md. 439; *Litchfield* v. *Hutchinson,* 117 Mass. 195; *Humphrey* v. *Merriam,* 32 Minn. 197; *Wilder* v. *DeCou,* 18 Minn. 470; *Cartwright* v. *Carpenter,* 7 How. (Miss.) 328; *Schwenck* v. *Naylor,* 102 N. Y. 683; *Miller* v. *Barber,* 66 N. Y. 588; *Benton* v. *Pratt,* 2 Wend. 385; *Upton* v. *Vail,* 6 Johns. 181; *Lunn* v. *Shermer,* 93 N. C. 164; *Hexter* v. *Bast,* 125 Pa. St. 52; *Cox* v. *Highley,* 100 Pa. St. 249; *Routh* v. *Caron,* 64 Tex. 289; *Jordan* v. *Walker,* 115 Va. 109; *Paddock* v. *Fletcher,* 42 Vt. 389. And the weight of authority is to the effect that it is not necessary, in order to maintain an action to recover damages for a false representation, to show that the defendant was in any way benefited. by the making of such representation, or that he was in collusion with someone else who was benefited. *Pasley* v. *Freeman, supra; Hart* v. *Tallmadge,* 2 Day, 381; *Endsley* v. *Johns,* 120 Ill. 469; *Fisher* v. *Mellen,* 103 Mass. 503; *Patten* v. *Gurney,* 17 Mass. 182; *New York L. I. Co.* v. *Chapman,* 118 N. Y. 288; *Rice* v. *Manley,* 66 N. Y. 82; *Hubbard* v. *Briggs,* 31 N. Y. 518; *White* v. *Merrit,* 7 N. Y. 352; *Upton* v. *Vail, supra; Cottrill* v. *Krum,* 100 Mo. 397; *Cox* v. *Coal & Oil Investment Co.,* 61 W. Va. 291. The leading case of *Pasley* v. *Freeman, supra,* in answer to the contention that no action lies unless the party making the representation has an interest, or colludes with the one who has, states: ''The gist of the action is the injury done to the plaintiff and not whether the defendant meant to be a gainer by it: what is it to the plaintiff whether the defend-

ant was or was not to gain by it; the injury to him is the same. And it should seem that it ought more emphatically to lie against him, as the malice is more diabolical, if he had not the temptation of gain. For the same reason, it cannot be necessary that the defendant should collude with one who has an interest. But if collusion were necessary, there seems all the reason in the world to suppose both interest and collusion from the nature of the act; for it is to be hoped that there is not to be found a disposition so diabolical as to prompt any man to injure another without benefiting himself. But it is said that if this be determined to be law, any man may have an action brought against him for telling a lie, by the crediting of which another happens eventually to be injured. But this consequence by no means follows; for in order to make it actionable, it must be accompanied with the circumstances averred in this count, namely, that the defendant, 'intending to deceive and defraud the plaintiffs, did deceitfully encourage and persuade them to do the act, and for that purpose made the false affirmation, in consequence of which they did the act.' ''

While representations as to the value of property are ordinarily regarded as mere statements of opinion, and not sufficient to sustain an action, false representations as to what the purchaser had paid for stock, or what he had been offered for the same, are statements as to material facts and are grounds for an action for fraud and deceit. *Jackson* v. *Stockert,* 75 W. Va. 482; *Cerriglio* v. *Pettit,* 113 Va. 533. The declaration in the instant case, as hereinbefore set out, alleges that the defendant made the statement that he had bought $20,000.00 worth of stock, while in fact he well knew that he had paid for only 100 shares by his note for $10,000.00, and had been given an additional 100 shares; that the output for the year had been sold at $6.50 per ton, when in fact he knew that the same had not been sold; that Benton had bought the land cheap, and that the survey showed it was worth six for one, while defendant, being thoroughly familiar with the tract, well knew that the said tract was not worth six times the amount for which the same was purchased by Benton,

and with intent to defraud and deceive stated and represented that reports of engineers based upon actual surveys showed the same to be worth six for one. Whether or not these allegations are true are questions for jury determination, under proper instructions. The facts thus stated must be considered on demurrer as proved to the jury, and they certainly gave a right of action. The demurrer to defendant's plea of the statute of limitations should have been sustained and the plea rejected. The case is therefore remanded for further proceedings.

*Reversed and remanded.*