## CITY NAT. BANK OF FAIRMONT v. FIDELITY MUT. LIFE INS. CO.

Civ. A. No. 295–F.

United States District Court
N. D. West Virginia.
Feb. 24, 1953.

John D. Amos and William P. Lehman, Fairmont, W. Va., for plaintiff.

Russell L. Furbee, C. H. Hardesty, Jr., Fairmont, W. Va., for defendant.

WARLICK, District Judge (by special assignment).

This action, sounding in tort, is one instituted by the plaintiff to recover damage for the alleged fraud and deceit of the defendant. The case was tried by the court without a jury. The facts are not greatly disputed. The damage sought to be recovered is $10,000. The action has its inception in a policy of life insurance issued by the defendant company on the life of one Donald P. Ave Lallemant, with a face value of $48,000, and being numbered 657697, payable at his death to his wife, Marjorie H. Ave Lallemant, if living, otherwise to the son of the insured.

Prior to October 25, 1948, Donald P. Ave Lallemant and wife Marjorie apparently agreed that their marital relations were irreconcilable and thereupon settled and adjusted their differences by entering into a separation agreement determining their complete marital status. (See stipulation Exhibit No. 1.)

At the same time Lallemant executed, acknowledged and delivered the purported assignment of the above life insurance policy to his wife, this assignment being on a form as required by the insurance company and as was furnished by it. Lallemant did not deliver this insurance policy to his wife, giving as an excuse therefor that it had been inadvertently left in his bank deposit box in West Virginia. This contract was entered into by the parties in Washington, D. C., where they had met by prior agreement. It was expressly stated to the wife, however, that the policy would be delivered within a few days and at a time not to exceed ten days. A writing to this effect was entered into and stipulated that the policy was to be mailed to the attorney for Mrs.

Lallemant within that period of time. The purported assignment of the policy of insurance was executed but the number thereof was not inserted on account of the absence of the policy.

On the following day, October 27, 1948, the assignee, through her attorneys, wrote the following letter to the defendant herein:

"October 27, 1948
"Fidelity Mutual Life Insurance Company of Philadelphia, Pa.
Philadelphia, Pa.

"Dear Sirs:

"I am the attorney for Mrs. Marjorie H. Lallemant of New York, New York, who is the wife of your insured, Donald P. Lallemant.

"Yesterday the parties entered into a written separation agreement under the terms of which, among other things, your insured, Mr. Lallemant, agreed to pay in installments the sum of $68,000.00 to my said client. The said agreement also provides in part as follows:

"'As collateral security to insure the payment of the said balance of $68,-000, the Husband has delivered to the Wife simultaneously with the execution of this agreement, two insurance policies one with a face value of $49,-000, issued by the Fidelity Mutual Life Insurance Company of Philadelphia, Pa., and the other in the face amount of $25,000 issued by the Atlantic Life Insurance Company of Richmond, Va., together with assignments thereof to the Wife. The Husband agrees to keep the said policies in full force and effect and to pay the premiums accruing thereon as they become due.'

"I have in my possession your form of collateral assignment executed by your insured, Donald P. Lallemant. I shall send to you within the next few days, by registered mail, the said policy and the said collateral assignment, so that you may make whatever changes may be necessary in your records.

"This letter is being sent to you to give you notice of the foregoing facts.

"If there is anything which you desire to communicate to me before I send the said policy and collateral assignment to you, please advise me.

"Very truly yours,
Irving D. Lipkowitz,
By: William Hughes Lewis"

Following its receipt and on November 9, 1948, the defendant herein answered the letter dated October 27 as follows:

"November 9, 1948
"Mr. Irving D. Lipkowitz
Attorney at Law
270 Broadway
New York–7–New York
"Re: Policy # 657697—Donald P. Ave'Lallemant
"Dear Mr. Lipkowitz:

"We have your letter of October 27 stating you are attorney for Mrs. Marjorie H. Lallemant, the wife of the insured under the above-numbered policy, and that the insured and his wife had agreed that the insured would assign a policy in our Company with a face amount of $49,000 to his wife. You did not mention any policy number, so there was a delay in matching up your letter with the proper policy file. I presume the policy numbered above is the one you have in mind, though it has a face amount of $48,000 and not $49,000.

"It is customary, and we think advisable, to have an assignment of a life insurance policy executed by the insured and all beneficiaries named in the policy, and the beneficiaries named in this policy are Marjorie H. Ave'Lallemant, wife of the insured, and John Donald Ave'Lallemant, son of the insured. They are named in a Mode of Settlement Designation No. 12342 dated April 15, 1947, which provides for payment of the death benefit under a deferred settlement plan. Under the circumstances, we suggest that the insured request a change of beneficiary to his wife alone with proceeds payable in one sum and, accordingly, we have prepared and are enclosing, in duplicate, a Change of Beneficiary form which may be used for this purpose. If used, both copies should be signed by the insured in the presence of a disinterested witness and dated prior to the date of the

assignment, which I understand has already been executed and is in your possession. Both copies of the Change of Beneficiary form should then be sent to this office for record. It will not be necessary to send the policy here, as the policy does not require endorsement of a change of beneficiary thereon, and it is not our practice to make any endorsement on a policy relating to an assignment.

"I presume the assignment was executed in duplicate, and both copies should be sent to this office for record. The duplicate copy, properly endorsed, will then be returned to you. If the beneficiary is changed as suggested to the wife of the insured, the assignment need be executed only by the insured.

"Very truly yours,
(s) Vincent P. Keesey
Assistant Counsel"

Upon receipt of the letter of November 9, Lewis, one of counsel for Mrs. Lallemant, talked to Keesey by telephone and discussed with him the import of the letter, agreeing in some instances and disagreeing in others, as to the terms thereof, promising however to comply if possible and as soon thereafter as conditions could be met.

Apparently nothing further was done until January 17, 1949, when Keesey again wrote to counsel for Mrs. Lallemant, as is shown by the following letter:

"January 17, 1949
"Mr. Irving D. Lipkowitz
Attorney at Law
270 Broadway
New York–7–New York
"Re: Policy No. 657697—Donald P.
Ave'Lallemant
"Dear Mr. Lipkowitz:
"On November 9, 1948, in response to your letter of October 27, we wrote you respecting the above numbered policy suggesting a change in beneficiary under the policy to the wife of the insured alone, and advising if the policy had been assigned, both copies of the assignment should be sent to this office for record.

"We have had no further word from you about the matter. I presume you are aware of the policy provisions that the Company will not be charged with notice of any assignment until the assignment in duplicate has been filed at this office for record. I would suggest that you urge the parties to request change of beneficiary as suggested, and see that both copies of the assignment are sent here for record. After that is done, we will return the duplicate copy of the assignment, properly endorsed, to show it has been recorded.

"Very truly yours,
(s) Vincent P. Keesey
Assistant Counsel"

On receiving this letter Lewis again telephoned Keesey, telling him that he was trying to comply with the defendant's demands, still felt that such was not however required, stating again that the policy had been assigned and that in his opinion that was all that would be legally required. On February 16, 1949, Keesey was again written by Lewis that every effort was being made to comply with his request and that he hoped to have the matter completed soon.

Counsel for Mrs. Lallemant were never able to secure the original policy or to get a duplicate of the assignment and at no time received any cooperation from Lallemant or his attorney. The defendant herein was never given a copy of the separation agreement and neither was the assignment of the policy by Donald P. Ave'Lallemant to his wife ever filed with the insurance company, though Lewis had told Keesey that when he received the policy he would send it and the assignment papers together.

This policy of insurance in question was sold to Donald P. Ave'Lallemant by John C. Hupp, who was the General Agent of the defendant with headquarters at Fairmont, West Virginia. Hupp had also sold Lallemant another policy of insurance in a large sum and had known Lallemant for some two or three years.

On March 3, Lallemant, being hard pressed for money, went to the office of Hupp for assistance and advice in seeking a loan. Hupp discussed at length the correspondence he had had with Keesey about the policy and was told by Lallemant that the purported agreement between his wife

and himself and other factors involved therein had not been finally determined and that the negotiations undertaken had broken off. Hupp then inquired of Edwin C. Griswold, Vice President of the plaintiff, with whom he was personally acquainted, whether Lallemant could obtain a loan of $5,000 on the $48,000 insurance policy which at that time had a cash surrender value of more than $5,000 and made an appointment with the bank officials for the following day. Hupp then telephoned Vincent P. Keesey, Assistant General Counsel for the defendant insurance company in Philadelphia, to inquire "whether there was any assignment on file, or record, against this policy." Keesey told Hupp that he didn't believe there was an assignment on record but that he would examine the file and by arrangement would send a telegram. Following this talk Keesey made the following memorandum:

"Policy 657697, AveLallemant, J. C. Hupp telephoned. Wanted to know if policy is assigned. Wire him back as soon as possible." "Policy not assigned on our records. Wired Hupp."

And on the same afternoon of March 3, 1949, sent the following telegram:

"Western Union
March 3, 1949

Serial
The Fidelity Mutual Life
Insurance Company
J. C. Hupp, General Agent
Fairmont, W. Va.

No assignment of policy 657697 Ave-Lallemant on file here.

V. P. Keesey
The Fidelity Mutual Life Insurance Co.
VPK:dmr
3:15 p. m."

The defendant insurance company, at its Home Office, had set up the practice of sending to its general agents copies of all letters, etc., that might in some way affect the policies sold by such general agents, and otherwise for the purpose of keeping them informed as to the status of each outstanding policy, and as such Hupp had been forwarded copies of letters written by Keesey to Lewis, one of counsel for Mrs. Lallemant.

On the following morning, March 4, 1949, Hupp accompanied Lallemant to the bank of the plaintiff and introduced him to Edwin C. Griswold, Vice President, and to Carl Springer, cashier. The original insurance policy of $48,000 numbered as aforesaid was produced by Lallemant. Griswold then asked him if the policy was free and clear of incumbrances and Lallemant answered in the affirmative. Thereupon Griswold turned to Hupp and asked him what he knew about it and as to the existence of any assignment against the policy. To this Hupp replied that he had a telegram from the Fidelity Life Insurance Company to the effect that it was clear of any assignment on record. Hupp had not carried the telegram with him to the bank but did produce it on the following day and filed it with the bank. Neither did he mention at that time to any of the bank officials anything about the previous correspondence between Keesey and counsel for Mrs. Lallemant, as was shown by the copies of record in his office in Fairmont, relating to the purported prior and first assignment by Lallemant to his wife.

Thereupon the bank agreed to and did lend Lallemant the sum of $5,000 on his note, dated March 4, 1949, payable within 60 days, and accepted as collateral therefor the assignment of the insurance policy herein to secure payment therefor. This assignment, properly executed, was transmitted to the insurance company by Hupp, acting for the bank, and was received and filed in due course. At such time there was no record of a prior assignment of the policy of insurance in question.

On March 8, Keesey for the insurance company wrote one of counsel for Mrs. Lallemant this letter:

"March 8, 1949
"Mr. Irving D. Lipkowitz,
Attorney at Law
270 Broadway
New York–7–New York
"Re: Policy No. 657697
Donald Paul Ave'Lallemant
"Dear Mr. Lipkowitz:
"You will remember we have had some correspondence with you respecting a pro-

posed assignment of the above numbered policy. However, to date, we have not received any assignment of the policy from you. I can advise you we have just received through our Fairmont, West Virginia, office an assignment of this policy dated March 4, 1949, executed by the insured naming City National Bank of Fairmont, West Virginia, assignee of the policy.

"Very truly yours,

(s) Vincent P. Keesey
Assistant Counsel"

and thereafter on March 10, 1949, Mrs. Lallemant through her counsel sent her assignment, dated October 26, 1948, to the insurance company.

Lallemant defaulted in the payment of the note to the plaintiff herein, and on May 3, 1949, plaintiff wrote defendant as shown in stipulation. Exhibit No. 11, requesting that it send the amount of the note to the plaintiff pursuant to the assignment of the policy to cover the amount of the loan.

On May 9, as is shown by Stipulation Exhibit No. 12, defendant advised the plaintiff that it had notice from the attorney of Mrs. Lallemant that she had an adverse claim against the policy under separation agreement between herself and the insured and notified the plaintiff that under such the only recourse of the defendant was to deny the right to surrender the policy until the equities of the adverse claim were established.

On such being shown, plaintiff filed a proceeding upon notice of motion for judgment against Donald P. Ave'Lallemant and the defendant herein in the Circuit Court of Marion County, West Virginia, returnable on June 30. This notice of motion was duly served on those against whom directed and was filed in the office of the Clerk of said court on June 24, and being to the effect that the plaintiff, City National Bank, would move said court for judgment against each of them in its favor for the sum of $5,000 and interest and costs, as was evidenced by said obligation dated March 4, 1949.

Thereafter and on June 29, 1949, in the District Court of the United States, for the Northern District of West Virginia, at Fairmont, this defendant filed an action of Interpleader pursuant to the provisions of Section 1335, Title 28, United States Code, naming as defendants the plaintiff herein and Donald P. and Marjorie H. Ave'Lallemant. This action was designated as No. 221–F, and contains the following prayer for relief:

"(B) That the defendants, and each of them, be enjoined and restrained from prosecuting any action against this plaintiff to recover this insurance provided for in said policy, in any other Court and/or in any jurisdiction, and particularly that the defendant, City National Bank of Fairmont, a Banking Corporation of Fairmont, West Virginia, and in the Northern District thereof, be enjoined and restrained from further prosecuting its action in the Circuit Court of Marion County, West Virginia, hereinbefore referred to."

On the same day Judge Baker entered an order of the court enjoining and restraining the plaintiff herein until the further order of the court from instituting or prosecuting any action as was prayed for in the complaint filed in said action, in the following language:

"(2) That the defendant, City National Bank of Fairmont, a corporation, be, and it is, hereby enjoined and restrained until further order of this Court, from further prosecuting the action brought by it against the plaintiff in the Circuit Court of Marion County, West Virginia, in the City of Fairmont, in said State, from instituting or prosecuting any other suit or proceeding against the plaintiff in any State Court or in any other Federal Court on account of the Policy of Insurance issued by the Plaintiff;

"(3) That the defendants and each and everyone of them, their heirs and assigns, and those claiming under them, be, and they hereby are enjoined and restrained, until the further order of this Court, from instituting or prosecuting any suit or proceeding against this plaintiff in any State Court or in any other Federal Court on account

of said Policy of Insurance, being Policy No. 657697, and issued by the plaintiff on the life of the defendant, Donald P. Ave'Lallemant."

Whereupon on a certified copy of the order of Judge Baker being filed in the Circuit Court of Marion County, on June 30, 1949, all further proceedings in the state courts were stayed. On July 22, 1949, the plaintiff herein filed its answer in the Interpleader action and in due season the answers of Donald P. and Marjorie H. Lallemant were filed, thereby joining the issue in the case filed in the United States District Court.

At the time of the filing of the Interpleader action the cash surrender value of the life insurance policy herein was $5,822.83, and at the time of filing the action defendant gave bond with approved security which was accepted, and subsequently, on March 6, under the authority of Judge Baker, paid into court the sum of $5,822.83, and on filing its motion to be discharged as a party to the Interpleader Action, was on April 6, 1950, dismissed therefrom, leaving the controversy as to the ownership of the cash surrender value of said policy dependent upon a determination as to the priorities between the assignments of Mrs. Lallemant and the plaintiff herein.

One among the terms of the policy of insurance was that relating to the assignment thereof, as follows:

"Assignment. * * * No Assignment shall be binding upon the Company until the original or a duplicate thereof is filed at its Head Office. The Company assumes no obligation as to the effect, sufficiency, or validity of any assignment."

The trial thereof was had on April 6, 1950, and the opinion of Judge Harry E. Watkins, Judge of the United States District Court of the State of West Virginia was filed on December 30, 1950, awarding the amount thereof, less certain immaterial sums for costs, etc., to Mrs. Marjorie H. Lallemant. Fidelity Mutual Life Ins. Co. v. City National Bank of Fairmont, D.C., 95 F.Supp. 276.

Judgment carrying the opinion into effect being filed on January 9, 1951, and providing in addition thereto that the injunction theretofore awarded at the time of the institution of the interpleader action be made perpetual in so far and to the extent only that the said injunction applies to prosecuting any action against the Fidelity Mutual Life Insurance Company, arising contractually, under insurance policy No. 657697.

No appeal was taken from the judgment of Judge Watkins awarding the amount of the policy to Mrs. Lallemant. On September 10, 1951, certain motions were made in the Circuit Court of Marion County, West Virginia, seeking to adjudge the rights of the parties, to that action, in view of the lifting of the restraining order in the United States District Courts and at that time judgment absolute was taken against Lallemant for the principal sum of the amount of the loan of March 4, 1949, including interests and costs. Execution was thereupon issued and was returned unsatisfied. Thereafter and on September 21, 1951, this action was instituted in which the plaintiff seeks to recover for the alleged fraud of the defendant and its misrepresentation and deceit in the loan by the plaintiff to Lallemant. The Answer filed denies such charge, sets out the inadequacy of the complaint, sets up the plea of the statute of limitations and asserts that the matters alleged are res adjudicata in view of the judgment in the Interpleader Action.

Taking up the question of the Statute of Limitations:

It is noted that prior to 1949 the Statute of Limitations for West Virginia in actions brought for fraud and deceit and misrepresentation was five years, and the courts have invariably held that where one by such action caused another to part with his property that this was a direct injury to property and such statute was applicable. Horton v. Tyree, 102 W.Va. 475, 135 S.E. 597. The General Assembly for said state, on March 7, 1949, effective ninety days from passage, amended the statute by reducing the five years to two years. Chapter

55, Article 2, Section 12, Code of West Virginia. The effective date of this statute being June 7, 1949.

We next come to the question of "When does the statute of limitations begin to run?"

"The general rule is that the statute begins to run from the date of the injury, and mere lack of knowledge of the actionable wrong does not suspend it, nor does silence of the wrongdoer, unless he has done something to prevent discovery of the wrong. Boyd v. Beebe, 64 W.Va. 216, 61 S.E. 304, 17 L.R.A.,N.S., 660". Harper v. Harper, 4 Cir., 252 F. 39, 43.

Judge Parker, speaking for the Court of Appeals in Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 629, says,

"The decisions of West Virginia must be followed in the interpretation of this statute; and there can be no question but that, under those decisions, the period of limitation runs from the time when the wrong is committed and the cause of action accrues, and not from plaintiff's discovery of it",

citing a long line of authorities from West Virginia. Baker v. Hendrix, 126 W.Va. 37, 27 S.E.2d 275.

There is, however, authority to the effect:

"The right to recover money paid under fraud or mistake shall be deemed to accrue, both at law and in equity, at the time such fraud or mistake is discovered, or by the exercise of due diligence ought to have been discovered." Section 5399, Code West Virginia, Chapter 55–2–7.

■ But however the rule, it would appear from the evidence in this case that the plaintiff would be barred on either of the contentions,—that of the plaintiff or that of the defendant,—for that two years and more had elapsed from the time of the commission of the wrong as contended for by the defendant or when the wrong should have been discovered by the exercise of due diligence, as contended by the plaintiff.

It would surely appear that when the answer of Mrs. Lallemant was filed to the Interpleader Action in the District Court, on Aug. 23, 1949, the facts alleged therein ought to have caused plaintiff to be aware of the matters about which now it makes complaint, and institutes its action so that its right would not have been prejudiced, since this answer and the exhibits set up a complete history of her connection with the transaction and placed plaintiff on notice.

Certain portions of the evidence of Mr. Carl D. Springer, cashier, of plaintiff, would indicate that he was fully aware of many of the facts but that he apparently did little if anything toward a further investigation so that he might further acquaint the plaintiff. He was asked these questions and gave the following answers:

"Q. So that you acting as the head of the bank did nothing whatsoever from the time you first received the May 9th, 1949 letter from the Company up until this Court met here in April, 1950, to find out what Mrs. Lallemant's claim was all about, that is correct? A. We were not interested in finding out what it was about because we thought our assignment was good, see.

"Q. My question is you made no effort whatsoever to find out what her claim was about, isn't that correct? A. I did not."

■ So it would not profit the plaintiff, as it would be barred by either, the date of the commission of the alleged wrong, or the date when it should by the exercise of due diligence have been discovered, unless the act by the defendant in filing its Interpleader Action before Judge Baker on the 29th of June, 1949, and the injunctive order issued by him, tolled the statute of limitations.

In order that the period of time during which a former action while still pending may subsequently be available to repel the statute of limitations, between the parties the cause of action in the two cases must be substantially identical. Brunswick Land Corp. v. Perkinson, 153 Va. 603, 151 S.E. 138, 141.

This seems to be the rule in West Virginia and the practice that has generally been followed, and in a recent case such is held by the court:

"We are of the opinion that on the law side, in order to apply the provisions of Code, 55–2–18, it is necessary that the cause of action and the parties be the same." Town of Clendenin ex rel. Fields v. Ledsome, 129 W.Va. 388, 40 S.E.2d 849, 851.

Plaintiff in its brief admits that the subject matter of this action is not the same as the subject matter embraced in the Interpleader action, this sounding in tort, and the other being in contract.

■ I am therefore of the opinion that the matter of the statute of limitations is narrowed down to a question of the injunctive relief granted as tolling the statute. I have purposely set out in my findings of fact the prayer for relief in the Interpleader action, together with the order of Judge Baker enjoining and restraining the further prosecution of the action of the plaintiff in the State courts in West Virginia. It is evident from a study that the plaintiff was not precluded by said restraint from instituting this action or any comparable action against the defendant to recover on the facts alleged herein, and that to have done so without authority would not have constituted a contempt of Judge Baker's order,—and that upon motion made and had before him that such relief would have been granted; so that plaintiff may have been privileged to institute this action or any comparable action at any time during the pendency of the Interpleader cause.

The United States Courts possess jurisdiction to enjoin both state and federal proceedings when Interpleader action is invoked and surely it can be said that Judge Baker was not without authority to issue the restraining order.

"Under statutory Interpleader there is authorization to enjoin both state and federal proceedings that interfere with the subject matter of the Interpleader Action." Moore's Federal Rules and Official Forms, at page 415; Dugas v. American Surety Co., 300 U. S. 414, 57 S.Ct. 515, 81 L.Ed. 720.

The Judicial Code and Judiciary Revision Act of 1948, 28 U.S.C.A. § 2283, among other things, provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where * * * in aid of its jurisdiction, or to protect or effectuate its judgments."

It likewise provides, 28 U.S.C.A. § 2361:

"In any civil action of interpleader or in the nature of interpleader under section 1335 of the title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property * * * involved in the interpleader action until further order of the court. * * *"

■■ Giving consideration next to the allegations of the complaint with respect to the charge of fraud, misrepresentation and deceit, I conclude from a study of the evidence that such does not make a claim for damages against the defendant.

"What is fraud? No precise or all-inclusive definition has or can be given. Yet, to establish actionable fraud it is generally recognized that in all cases certain essential facts must appear. These are: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party." Ward v. Heath, 222 N.C. 470, 472, 24 S.E.2d 5, 7.

"The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge

518

of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss." Plotkin v. Realty Bond Co. 204 N.C. 508, 511, 168 S.E. 820, 821.

What is meant by fraud is often set down:

"gross mistake implying bad faith is equated to 'fraud.' * * * By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest." U. S. v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 155, 96 L.Ed. 113; Ripley v. United States, 223 U.S. 695, 750, 32 S.Ct. 352, 56 L.Ed. 614.

Fraud is never presumed and must be established by the one who alleges it by clear and distinct proof. Acker v. Martin, W.Va., 68 S.E.2d 721; Hunt v. Hunt, 91 W.Va. 685, 114 S.E. 283.

"The courts almost uniformly hold that an action for false representations, called also an action of or for deceit, may be maintained against a party who makes a false representation of a fact with knowledge of its falsity, * * * with intent that it * * * be acted upon, where the person to whom it is made acts upon it, and by so doing suffers injury." Horton v. Tyree, 102 W.Va. 475, 135 S.E. 597, 599.

Presented with the situation that Lallemant went to the office of Hupp, the general agent of the defendant, for the purpose of effecting a loan on the policy of insurance owned by him, and was acquainted with Hupp, with whom he had on a former occasion discussed the property value of his policy, and that in consequence thereof Hupp contacted some one among the officials of the plaintiff and thereafter on the evidence heard the loan was effected, I fail to see the fraud, misrepresentation, and deceit which in my opinion must be shown for a recovery herein, and for that reason I must and I do conclude that the plaintiff is not entitled to recover therefor.

Counsel will submit judgment.