**In re Randy HOSPELHORN and Jacqueline Hospelhorn, Debtors.**

**Robert E. LIVINGSTON and Nikolina T. Livingston, Plaintiffs,**

v.

**Randy HOSPELHORN and Jacqueline Hospelhorn, Defendants.**

**Bankruptcy No. 1–81–01175.**
**Adv. No. 1–81–0176.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Nov. 16, 1981.

Robert J. Harris, Cincinnati, Ohio, for debtors.

William Schilling, Cincinnati, Ohio, for plaintiffs.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

The debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code and received their discharge. Plaintiff timely filed this complaint to determine the dischargeability of a debt, pursuant to § 523(a)(2)(A) for fraud in the obtaining of a loan through the making of false representations, and for judgment. The matter came on for trial at the conclusion of which judgment was reversed. It was agreed at the outset of the trial that debtor's wife, Jacqueline M. Hospelhorn, was not involved in the present controversy, so that it will be understood that when we hereafter refer to "defendant" or "debtor" the reference is to Randy Hospelhorn. The only witnesses at the trial were plaintiff, Robert E. Livingston, and both Randy and Jacqueline Hospelhorn.

Pertinent facts are the following. Defendant is and for some time has been, a builder. In early 1979 he began construction for the market of a house located on Vineyard Trace. In connection with that project he had a $50,000 mortgage with Tri-State Savings and Loan, as well as two $4,000 loans from two other lenders. Construction at Vineyard Trace continued through the summer of 1979. During this

period, in the spring of 1979, defendant did some remodeling work on plaintiff's home in New Richmond. In the course of that work, a friendly relationship arose between plaintiff and defendant. In mid-May of 1979 defendant asked plaintiff for a loan. Plaintiff testified that defendant said that the purpose of the loan was to buy building lots, and defendant offered the prospective lots as security for the loan. Defendant, however, said that the purpose of the loan was to begin construction and he thought plaintiff knew that. Plaintiff lent defendant $12,000, evidenced by a note dated June 1, 1979. The note recited a due date of June 1, 1980, and applied a 12.5% interest rate. The note contained the following:

> "The undersigned pledges as collateral the lot and construction at Twigs Corner and hereby grants the holder a first lien upon said collateral to secure the sum of $13,500."

The note itself was prepared by plaintiff without the advice of counsel. Plaintiff is a retired accountant and this was his first experience dealing with real estate.

Defendant completed construction on the Vineyard Trace building in August of 1979. During its construction, defendant had been trying to sell it without success. This negative experience persuaded him to abandon any plans of additional construction at Twigs Corner. It is undisputed that defendant used the proceeds of the loan from plaintiff in completing the Vineyard Trace construction. It was the testimony of plaintiff that defendant invited him to see the Vineyard Trace construction sometime prior to its completion, and that he then understood that defendant had already spent his money in completing Vineyard Trace, so there was nothing that he could do about that. Defendant takes sharp issue with that testimony, himself testifying that at the time that he invited plaintiff to see Vineyard Trace, he still had most of the $12,000 in hand, and offered to repay it, but plaintiff told him to use it as he saw fit. Nothing was done by either party to the note by way of recording or other appropriate steps to implement the statement therein that plaintiff be given "a first lien upon

said collateral". It was defendant's testimony that he could not, and had no intention, of granting plaintiff a first lien on the Twigs Corner property because that would be impossible for him to do, since Tri-State would be financing the purchase of the land and would have to be given the first mortgage. Defendant testified that he decided to abandon the Twigs Corner project within a few weeks after June 1, 1979. Plaintiff has secured a judgment against debtor from the Court of Common Pleas of Clermont County, Ohio, on the note in the amount of $13,500.

The relief sought by plaintiff is pursuant to 11 U.S.C. § 523(a)(2)(A) which provides as follows:

> "(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * * * * *
>
> (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Section 523(a)(2) of the Bankruptcy Code is derived from § 17(a)(3) of the predecessor Bankruptcy Act with but slight modification. 3 *Collier on Bankruptcy* (15th ed.) 523–32. Since the grounds presently asserted by plaintiff, obtaining money by false pretenses is to be found in both enactments, decisions under the Bankruptcy Act may be applied in cases arising under the Bankruptcy Code, as does that now before us. In *In re Roeder,* et al.; Case No. B–1–76–1672 (1977) (unreported) we made a statement of the pertinent law which we find applicable here:

> "To establish a claim for obtaining money or property by false representation under Sec. 17(a)(2) of the Bankruptcy Act, plaintiff must prove (1) that the claimed representations were made; (2) that at the time they were made defendant knew they were false; (3) that they were made with the intention and purpose of deceiv-

ing plaintiff; (4) that plaintiff relied on such representation; and (5) that the creditor (here plaintiff) sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir., 1975), citing and approving *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va., 1967)."

▮ Plaintiff contends that the evidence establishes that defendant falsely represented, at the time the note was given, (a) that the proceeds of the loan were going to be used for a new real estate venture; (b) the new venture would involve lots and construction at Twigs Corner; and (c) plaintiff was to have a first lien on the lot and construction of the new venture, all representations contained in the note signed by defendant. While in the end in all three of these respects the representations of defendant proved to be untrue, we cannot say that in all three respects the evidence sustains plaintiff's position that defendant knew them to be untrue on June 1, 1979. That is, on this record we cannot say that on June 1, 1979, defendant did not intend to use the proceeds of the loan for a new venture at Twigs Corner. Defendant's own testimony, however, does establish that defendant knew on June 1, 1979 that the third assertion was untrue, that he would give plaintiff a first lien on the new lot and construction, for he testified that he knew that the purchase of the lots would be financed by Tri-State Savings and Loan, and Tri-State would require a first lien on the property. Defendant, therefore, having been involved in real estate transactions and in the construction business, knew or should have known that he would be unable to comply with this provision of the note. It is sufficient to make out the requirement that the misrepresentation be intentionally made to show that it was made with reckless disregard for its truth. *In re Houtman*, 568 F.2d 651, 656 (9th Cir., 1978). Thus, at best defendant was reckless in signing and undertaking to give a first lien that he could not give.

▮ With respect to reliance, the note signed by defendant in reciting that defendant grants plaintiff a first lien on the collateral specified, makes out a prima facie case that plaintiff relied on that promise. The burden then passed to defendant to rebut that case. *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir., 1979). Defendant failed to sustain that burden. In reaching this conclusion we considered the following evidence, but concluded that it would not suffice to sustain defendant's burden. Plaintiff's own testimony was that he advanced money to defendant for the purpose of helping out defendant, in whom he had faith and who he wanted to help. That this was his motivation was clear from the fact that he did not approach this project as a real estate investment. All that plaintiff asked for and received was interest on the money lent at 12½%, the same rate that he was receiving in an investment fund maintained by an established brokerage firm. The much greater risk of the commitment of funds to defendant's project is self-evident, yet plaintiff did not seek a return commensurate with his investment. In the end, however, we concluded that this evidence does not meet the prima facie case provided by the note, for the reason that a desire to be helpful and a requirement for security are not incompatible.

▮ The final requirement, that loss was sustained as the proximate result of the misrepresentation, is sufficiently made out by plaintiff on this record. If plaintiff had actually been put in the position of a secured creditor, he would have been thereby protected from the loss here sustained, for any loss arises specifically because plaintiff is only an unsecured creditor.

▮ Finally in an effort to escape liability, defendant contends that after he decided not to proceed with the Twigs Corner project, he offered to return the amount lent to plaintiff, but plaintiff told him to use the money as he saw fit. Plaintiff testified that only then did he use it in the completion of the Vineyard Trace house. Plaintiff denies that he gave defendant any such authorization. Defendant is thus con-

tending that plaintiff has either waived or ought to be estopped from asserting nondischargeability because of this act which occurred subsequent to the misrepresentation. Having thoroughly studied the record, however, we conclude that the evidence does not sustain defendant's position in this respect. The evidence is insufficient to support defendant's contention.

We find the issues in favor of plaintiff. The foregoing constitutes our findings of fact and conclusions of law. Plaintiff's judgment is found to be nondischargeable.