In re Joseph J. CAROZZA, Debtor.

Johannes Hendrick PAGE, Plaintiff,

v.

Joseph J. CAROZZA, Defendant.

Bankruptcy No. 891–83188–20.
Adv. No. 891–8450–20.

United States Bankruptcy Court,
E.D. New York,
Westbury Division.

May 10, 1994.

Edward A. Christensen, Rivkin, Radler & Kremer, Uniondale, NY, and Macco, Hackeling & Stern, Huntington, NY, for plaintiff.

Isaac Blachor, Kroll & Blachor, Garden City, NY, for debtor/defendant.

Scott Y. Stuart and Stan Y. Yang, Office of the U.S. Trustee, Garden City, NY.

Marilyn A. Frier, Woodmere, NY, Chapter 7 Trustee.

## DECISION, ORDER AND JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court[1] are dispositive motions by both parties; Plaintiff has moved for summary judgment and Debtor has moved for dismissal of the Adversary Proceeding.

---

1. The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(I) of title 28.

Plaintiff commenced the within Adversary Proceeding by the filing of a complaint with the Court on November 14, 1991. Pursuant to the Adversary Proceeding, Plaintiff seeks judgment determining that certain debts for money and/or property owed by Debtor are non-dischargeable for having been incurred through false pretenses, false representations, or actual fraud. *See* 11 U.S.C. § 523(a)(2) (1994).

### RELEVANT FACTUAL BACKGROUND

During the mid to late 1980s, Plaintiff and Debtor had a dispute concerning the sale of a yacht by Plaintiff to Debtor. The dispute resulted in litigation commenced by Plaintiff in 1991, and after two days of trial, the Circuit Court of Raleigh County, West Virginia (the "State Court" or the "West Virginia state court") rendered a written judicial opinion[2] which set forth the following findings of fact.

During the years from 1972 through 1977, Plaintiff constructed a 90 foot yacht in Durban, South Africa. Plaintiff named the ship "Eyola". While sailing the Caribbean Sea in 1984, Plaintiff and Debtor met and subsequently discussed a sale of Eyola to Debtor. Through their original discussions they established a price of $400,000. The negotiations progressed, and the terms agreed to were a sale of Eyola to Debtor for Debtor's payment of $80,000 in cash, $20,000 worth of repairs to be made to Eyola by Plaintiff, and the transfer of 85,000 shares of stock of a newly formed Florida corporation, Omni Health Systems, Inc. ("Omni Health"). Debtor alleges that he never opined as to the value of the shares of the Omni Health stock, but the court found that Debtor represented the stock to be worth $300,000. (*Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991, at 12, 13 (Ashworth, J.))

At closing on August 20, 1984, Debtor expressed inability to pay the $80,000 cash in a lump sum. The parties then agreed for $55,000 to be tendered immediately and the $25,000 balance, as well as the 85,000 shares of Omni Health stock, to be tendered at a later time. Ownership of Eyola was transferred to Debtor.

Debtor later tendered certain sums which finally reduced the $25,000 owed to $17,000; this final $17,000 was never paid by Debtor. The 85,000 shares of Omni Health stock were also never transferred.

Debtor had ownership of Eyola transferred to two entities, then, after having it appraised for $375,000, he made a charitable contribution of it to Palm Beach Atlantic College. Debtor "took a charitable deduction based on a fair market value sale of $400,000". *Id.* at 10. Debtor's allowed deduction was $311,585.

The West Virginia state court also made the following conclusions of law.

Plaintiff effectively transferred ownership of Eyola to Debtor, who exercised ownership and control of it by titling it to two different corporations, changing its South African registry to British registry and charitably donating it to Palm Beach Atlantic College. Debtor failed to pay $17,000 of the agreed cash price and failed to transfer the 85,000 shares of Omni Health stock breaching his contract with Plaintiff.

The opinion also states:

The evidence is clear and convincing that had the 85,000 shares of Omni Health Systems, Inc. stock been transferred by [Debtor] to the [P]laintiff as promised, it was not worth $300,000, either then or thereafter as represented by [Debtor]. This representation was material and false. It was intended to be relied upon and was acted upon by the [P]laintiff to his damage to a full three-fourths of the agreed value of the yacht, Eyola, of $400,000.

. . . . . .

The defendant, Joseph J. Carozza, Jr., is guilty of actionable fraud by his misrepresentation of the value of the Omni stock to the plaintiff.

---

2. *Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991 (Ashworth, J.).

*Page v. Carozza,* Civ.Act. No. 87–C–967 (Cir. Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991, at 12–13 (Ashworth, J.).

The court held that Plaintiff was entitled to rely upon Debtor's representations as to the value of the Omni Health stock, due to Debtor's relationship and connection as a whole with the company. This right to rely was justifiable, even without independent investigation by Plaintiff. Furthermore, the evidence indicated that Plaintiff would not have been able to uncover the true value of the stock or the falsity of Debtor's representations even had he made an independent investigation.

The court further wrote: "The defendant, Joseph J. Carozza, Jr., is guilty of actionable fraud by his misrepresentation of the value of the Omni stock to the plaintiff." *Id.* at 13.

Finally, the court held that by his non-performance, Debtor was unjustly enriched and his own actions made restitution impossible. Plaintiff was awarded damages of $317,-000, consisting of the $17,000 not paid and the $300,000 worth of Omni Health stock never transferred, plus interest from August 21, 1984.

An order dated April 29, 1991 was signed in connection with Judge Ashworth's opinion, which provides that the court found in favor of Plaintiff on counts of common law fraud, breach of contract, and counts brought under securities laws, blue sky laws, and the Uniform Commercial Code. *Id.*

Approximately three months later, on July 24, 1991, Debtor filed a voluntary petition for bankruptcy relief under chapter 7 of title 11, United States Code ("Bankruptcy Code"). As stated, on November 14, 1991, Plaintiff commenced the within Adversary Proceeding, seeking to have the debt arising from the West Virginia state court order determined non-dischargeable.

## LEGAL DISCUSSION

The parties' arguments for and in opposition to summary judgment focus upon the collateral estoppel effect which should be afforded to the judicial opinion of the West Virginia state court.

■ Pursuant to the doctrine of collateral estoppel, issues which have been determined by one court may not be subsequently relitigated in another court where certain factors are present:

> Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); RESTATEMENT 2d JUDG. § 68; Scott, *Collateral Estoppel by Judgment,* 56 HARV.L.REV., 1, 2–3 (1942) ). *See, e.g., Winters v. Lavine,* 574 F.2d 46, 66 (2d Cir.1978); *see also Arndt v. Hanna (In re Hanna),* 163 B.R. 918, 924 (Bankr.E.D.N.Y. 1994) ("Collateral estoppel is applicable in bankruptcy dischargeability proceedings.") (quoting *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ). The *Montana* language has become a four-part test which may be applied to the issue in question to discern whether its prior determination will collaterally estop a party from again litigating it:

(1) The issue sought to be precluded must be the same as that involved in the prior action;

(2) That issue must have been actually litigated;

(3) It must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the prior judgment.

*Hanna,* 163 B.R. at 925 (citing *e.g., Moreno v. Schwartz (In re Schwartz),* 36 B.R. 355, 357 (Bankr.E.D.N.Y.1984); *First Nat'l Bk. v. Overmyer (In re Overmyer),* 52 B.R. 111, 115 (Bankr.S.D.N.Y.1985) (quoting *In re Ross,* 602 F.2d 604, 608 (3d Cir.1979))).

Plaintiff argues that under section 523(a)(2) of the Bankruptcy Code, Debtor's obligation to Plaintiff should be determined to be non-dischargeable because it derives

from fraud. 11 U.S.C. § 523(a)(2)(A) (1994).[3] Plaintiff further contends that all issues necessary for a determination that the debt is non-dischargeable were determined by the West Virginia state court and may not be again litigated in this Court under the doctrine of collateral estoppel.

Debtor opposes summary judgment on two grounds.

Debtor's first argument is that prong one of the collateral estoppel test is not satisfied. Debtor contends that the State Court findings that Debtor committed "common law fraud" and "actionable fraud" should have no collateral estoppel effect in this action for dischargeability. Debtor asserts that the terms "common law fraud" and "actionable fraud" do not require proof of the same elements and are therefore not identical to the meaning of "actual fraud", as the latter term is used in section 523(a)(2) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(2) (1994). Of course, for collateral estoppel to apply, the issue must be the same in both proceedings. We look at this argument first.

Debtor states, without citation to authority, that " 'Actionable fraud' in West Virginia includes 'actual fraud' and 'constructive fraud', the two being distinguished principally on the ground of intent." (Debtor's Memorandum of Law at 7.) Debtor correctly acknowledges that the State Court's finding of actionable fraud could not have implicitly meant constructive fraud. *(Id.)* Constructive fraud requires a finding of a breach of duty. *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76–77, 285 S.E.2d 679 (1982) (many citations given).[4] The State Court did not discuss duty at all, but rather covered the ele-

ments of fraud, and Debtor admits this. (Debtor's Memorandum of Law at 7.)

Furthermore, in contrast to Debtor's unsupported assertion, the term "actionable fraud" has been defined, and its necessary elements enumerated, in a fashion which negates the possibility that its meaning includes constructive fraud:

'[T]o establish *actionable fraud* it is generally recognized that in all cases certain essential facts must appear. These are: (1) a false representation or concealment of a material fact; (2) *reasonably calculated to deceive;* (3) made with *intent to deceive;* (4) and which does, in fact, deceive; (5) to the hurt of the injured party'. *Ward v. Heath,* 222 N.C. 470, 472, 24 S.E.2d 5 (1943). *'The essential elements of actionable fraud* or deceit are the representation, its falsity, *scienter, deception,* and injury. The representation must be definite and specific; it must be materially false; *it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent;* it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss. *Plotkin v. Realty Bond Co.,* 204 N.C. 508, 511, 168 S.E. 820 (1933). What is meant by fraud is often set down: 'gross mistake implying bad faith is equated to 'fraud' ... By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest.' *U.S. v. Wunderlich,* 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951); *Ripley v. United States,* 223 U.S. 695, 750, 32 S.Ct. 352, 56 L.Ed. 614 (1912).... 'The courts almost uniformly hold that an action for false representa-

---

**3.** Pursuant to section 523(a) of the Bankruptcy Code, an individual debtor is not granted a discharge from debts incurred by, for example, "false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A) (1994).

**4.** On the difference between actual and constructive fraud, the West Virginia Supreme Court of Appeals has written:

The distinction between actual and constructive fraud has been summarized in this jurisdiction by our federal courts: Fraud ... may consist of either "actual fraud" or "constructive fraud." Actual fraud, as defined by the West Virginia courts consists of "deception, intentionally practiced, to induce another to

part with property or to surrender some legal right, and which accomplishes the end designed." Constructive fraud, on the other hand, has been defined as "a breach of legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence.... Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud [citations omitted]." *Barber v. Union Carbide Corp.,* 172 W.Va. 199, 204 n. 2, 304 S.E.2d 353 (1983) (quoting *Steele v. Steele,* 295 F.Supp. 1266, 1269 (S.D.W.Va.1969)).

tions, called also an action of or for deceit, may be maintained against a party who makes a false representation of a fact with knowledge of its falsity ... with intent that it ... be acted upon.... *Horton v. Tyree*, 102 W.Va. 475, 135 S.E. 597 (1926). *City Bk. of Fairmont v. Fidelity Mut. Life Ins. Co.*, 110 F.Supp. 510, 517–18 (N.D.W.Va.) (emphasis ours), *aff'd*, 206 F.2d 531 (4th Cir.1953), *cert. denied*, 347 U.S. 903, 74 S.Ct. 428, 98 L.Ed. 1062 (1954).[5] We therefore hold that the State Court's finding that Debtor is "guilty of actionable fraud" constituted a finding of actual fraud.

Though inconsistently, Debtor also states, "Actionable fraud in West Virginia includes negligent misrepresentations disregarding the defendant's knowledge of falsity." (*Id.* (citing *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981)) (This conflicts with Debtor's prior statement that actionable fraud could mean either actual or constructive fraud.)) Debtor did not provide any case defining negligent misrepresentation under West Virginia law, nor were we able to locate one. The *Lengyel* opinion contains no reference to negligent misrepresentation and our discussion of it below[6] demonstrates that Debtor's citation to it does not support this proposition. Furthermore, our quote from the *Fairmont* opinion establishes that intent is required and therefore the term "actionable fraud" in West Virginia cannot include a negligently made misrepresentation. *City Bk. of Fairmont v. Fidelity Mut. Life Ins. Co.*, 110 F.Supp. 510, 517 (N.D.W.Va.), *aff'd*, 206 F.2d 531 (4th Cir.1953), *cert. denied*, 347 U.S. 903, 74 S.Ct. 428, 98 L.Ed. 1062 (1954) (see quote above).

We turn finally to the State Court's holding that Debtor was liable for common law fraud. (*Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), Order dated April 29, 1991, ¶ 2 (Ashworth, J.)) In West Virginia, the courts use the term "com-mon law fraud" as a synonym for the term "fraud". *E.g., Baker v. Wheat First Secs.*, 643 F.Supp. 1420, 1433 (S.D.W.Va.1986) (elements of "common law fraud" are elements of "fraud" set forth by West Virginia Supreme Court of Appeals); *see Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 344, 368 S.E.2d 710 (1988) (West Virginia high court uses "common law fraud" as synonym for "fraud"); *Lengyel*, 167 W.Va. at 276, 280 S.E.2d 66 (accord). Indeed, the State Court opinion, as acknowledged by Debtor, tracks the elements of fraud, while using the term common law fraud.

For all the reasons discussed, we hold that the State Court found Debtor liable for "fraud".

We continue, then, by comparing the elements of "fraud" under West Virginia law to the elements of fraud in the context of a dischargeability proceeding. This will enable us to determine whether, for collateral estoppel purposes, the same issue has been decided in the previous litigation. The elements of fraud have often been set forth by West Virginia's highest court, which has written:

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

*Horan v. Turnpike Ford, Inc.*, 189 W.Va. 621, 623, 433 S.E.2d 559 (1993) (citing *e.g., Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927); *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981)); *see, e.g., Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.*, 188 W.Va. 468, 472, 425 S.E.2d 144 (1992) (identical quote); *Prudential Ins. Co. of Amer. v. Couch*, 180 W.Va. 210, 211, 376 S.E.2d 104 (1988). The standard is by clear and convincing evidence. *Bowling*, 188 W.Va. at 472,

---

**5.** The State Court's holdings for Plaintiff on his count of common law fraud, (*Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), Order dated April 29, 1991, ¶ 2 (Ashworth, J.)), and actionable fraud, (*Id.*, Opinion dated April 22, 1991, at 13), also establish that the type of fraud found was actual fraud, not constructive fraud. *See Romano v. New Eng.*

*Mut. Life Ins. Co.*, 178 W.Va. 523, 529, 362 S.E.2d 334 (1987) (After concluding that plaintiff's allegation was one of "common law fraud", the court listed the elements of an action in "fraud", treating the two terms synonymously.).

**6.** *See infra* note 7 and accompanying test.

425 S.E.2d 144 (citing, *e.g.*, *C.W. Dev., Inc. v. Structures, Inc.*, 185 W.Va. 462, 408, 408 S.E.2d 41 (1991); *Cardinal State Bank, Nat'l Ass'n v. Crook*, 184 W.Va. 152, 399 S.E.2d 863 (1990); *Romano v. New England Mut. Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987)).

■ To have a debt determined to be non-dischargeable for fraud under the Bankruptcy Code, the five elements that must be established in this district are: (1) The debtor must make an express or implied false representation; (2) The representation must be made with knowledge that it was false at the time it was made; (3) The false representation must be made with the intent to deceive; (4) The creditor must have reasonably relied upon the debtor's misrepresentation(s); and finally, (5) The creditor must establish that it was damaged. *Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 914 (Bankr.E.D.N.Y.1987), *aff'd*, 86 B.R. 21 (E.D.N.Y.1988), *aff'd*, 862 F.2d 304 (2d Cir. 1988); *Kotan v. Austin (In re Austin)*, 132 B.R. 1, 3 (Bankr.E.D.N.Y.1991). The standard is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Citibank v. Wiener (In re Wiener)*, 144 B.R. 17, 20 (Bankr.E.D.N.Y.1992); *First Dep. Nat'l Bank v. Pursley (In re Pursley)*, 158 B.R. 664, 667 (Bankr.N.D.Ohio 1993).

■ At first blush, it appears that a plaintiff alleging fraud in West Virginia need not establish two elements that are necessary in bankruptcy court (in this district, at least) for a determination that a debt is non-dischargeable: It need not be established that the misrepresentation was made with knowledge that it was false, nor that it was made with the intent to deceive. *But cf. Lawyers Title Ins. Corp. v. Pitt*, 157 B.R. 585, 587 n. 2 (E.D.Va.1991) (*decision revoked in part on reconsideration in unpublished opinion*) ("[s]ection 523(a)(2)(A) of Title 11 essentially incorporates the elements of common law

fraud", setting forth a five part test which *includes* knowledge of falsity and intent to deceive) (citing *Sweet v. Ritter Fin. Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967)); *City Bk. of Fairmont v. Fidelity Mut. Life Ins. Co.*, 110 F.Supp. 510, 517 (N.D.W.Va.), *aff'd*, 206 F.2d 531 (4th Cir.1953), *cert. denied*, 347 U.S. 903, 74 S.Ct. 428, 98 L.Ed. 1062 (1954) (" 'By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest.' ") (quoting *U.S. v. Wunderlich*, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951); *Ripley v. United States*, 223 U.S. 695, 704, 32 S.Ct. 352, 356, 56 L.Ed. 614 (1912)). But further examination of the State Court's opinion and of West Virginia law reveals that these two elements were necessarily established, with collateral estoppel effect.

The first element that is apparently missing is the requirement that Debtor's misrepresentation was made with knowledge that it was false at the time it was made. Our research of the knowledge required of a defendant in an action for fraud indicates that under West Virginia law, an action for fraud will lie where a statement is made under one of three circumstances. In *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981), the West Virginia high court wrote:

> It is not essential that the defendant know for a fact that the statement or act alleged to be fraudulent is false.[7] An action for fraud may lie where the defendant either *knows* the statement to be false, makes the statement *without knowledge* as to its truth or falsity, or makes it under circumstances such that he *should have known its falsity* . . . .

*Id.* at 277, 280 S.E.2d 66 (emphasis ours) (citing *State v. Berkeley*, 41 W.Va. 455, 23 S.E. 608 (1895); *Osborne v. Holt*, 92 W.Va. 410, 415–16, 114 S.E. 801 (1922)).

In the instant case, pursuant to West Virginia state law, in order for the State Court to hold as a conclusion of law that Debtor

---

**7.** Debtor cited to this page of the *Lengyel* opinion for the proposition that intent to deceive is not an element of actionable fraud in West Virginia. (Debtor's Memorandum of Law at 7.) Debtor apparently read only this sentence, though, for without reading further it would indeed appear that an action for fraud would lie in the absence

of intent or any similar scienter requirement. But the language which follows this statement in *Lengyel* demonstrates that a higher degree of culpability is required to establish fraud, and that there is no strict liability for every misrepresentation.

committed common law fraud, and that Debtor "is guilty of actionable fraud by his misrepresentation of the value of the Omni stock to Plaintiff"[8], it had to determine that Debtor made his statement under one of these three scenarios. Necessarily, then, Debtor knew his statement was false at the time it was made, or he made the statement without knowledge as to its truth or falsity, or the statement was made under circumstances such that Debtor should have known its falsity. The West Virginia state court could not have found for Plaintiff and against Debtor on the count of common law fraud without determining that Debtor's statement was made under one of these three scenarios. *Id.* (citing *State v. Berkeley,* 41 W.Va. 455, 23 S.E. 608 (1895); *Osborne v. Holt,* 92 W.Va. 410, 415–16, 114 S.E. 801 (1922)). And, since this determination was an element of Plaintiff's cause of action, and it was actually litigated, it was necessarily tried and decided.

We now look to whether this holding satisfies the analogous element of the instant non-dischargeability complaint. As stated, in this district the statement must be made with knowledge that it was false at the time it was made. *Kovitz v. Tesmetges (In re Tesmetges),* 74 B.R. 911, 914 (Bankr.E.D.N.Y.1987), *aff'd,* 86 B.R. 21 (E.D.N.Y.1988), *aff'd,* 862 F.2d 304 (2d Cir.1988); *Kotan v. Austin (In re Austin),* 132 B.R. 1, 3 (Bankr.E.D.N.Y. 1991). If the West Virginia state court found that Debtor misrepresented the value of the Omni Health stock under the first scenario, then he knew the statement to be false at the time it was made. The element at issue in this proceeding would clearly be satisfied.

▪ In addition, if the State Court found that Debtor's statement as to the value of the Omni Health stock was made without knowledge as to its truth, again the intent element is satisfied for purposes of a non-discharge-

ability complaint: If Debtor had *no* knowledge of the value of the Omni Health stock, then his representation that the stock was worth $300,000, when it could have been worthless, was grossly reckless.[9] A representation that is false due to gross negligence or reckless disregard for its truth satisfies the requirement that it be made with knowledge that it was false at the time it was made. *Birmingham Tr. Nat'l Bk. v. Case (In re Case),* 755 F.2d 1474, 1476 (11th Cir. 1985) (citations omitted); *Waitman v. Steed,* 157 B.R. 355, 357–58 (Bankr.N.D.Ohio 1993) (citations omitted); *In re Coughlin,* 27 B.R. 632, 636 (Mass.B.A.P.1983) (citing cases); *In re Hospelhorn,* 18 B.R. 395, 398 (Bankr. S.D.Ohio 1981) (citing *In re Houtman,* 568 F.2d 651, 656 (9th Cir.1978)).

▪ The final scenario which could have been the basis for the State Court to conclude that Debtor committed fraud is if it found that Debtor made his representation as to the value of the Omni Health stock under circumstances such that he should have known of its falsity. This appears to have been the case. The West Virginia state court found that Debtor had a relationship with Omni Health:

> The evidence discloses that the relationship and connection of the defendant, Dr. Carozza, to Omni Health Systems, Inc. . . . was far greater than an uninformed mere stockholder. The plaintiff had the right to rely upon that representation as a true quote, without making inquiry or investigation to determine the truth thereof. The defendant had a duty to reveal his connection with and his knowledge of these operations.

*Page v. Carozza,* Civ.Act. No. 87–C–967 (Cir. Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991, at 13 (Ashworth, J.). If Debtor should have known he was misrepresent-

---

8. *Page v. Carozza,* Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991, at 13 (John C. Ashworth, J.).

9. Debtor alluded that his misrepresentation may have been made negligently. (Debtor's Memorandum of Law at 7.) The contention that Debtor, a doctor, merely negligently misrepresented the value of Omni Health Systems, Inc. stock, a corporation with which it was held he had a connection and a relationship which was not revealed to Plaintiff, such that the value of 85,000 of its shares correctly equaled the non-cash portion of the purchase price of the Eyola yacht, is unconvincing. Nevertheless, West Virginia law requires that the statement was made under one of three circumstances in order for the State Court to find fraud, and since the statement was so made, it was more than negligently made as a matter of law.

ing the value of the Omni Health stock, he was making the statement with reckless disregard for its truth. A misrepresentation made under circumstances where the debtor should have known of its falsity is one made with reckless disregard for its truth. This again satisfies the element of a non-dischargeability complaint that the statement be made with knowledge that it was false at the time it was made. *Case,* 755 F.2d at 1476; *Steed,* 157 B.R. at 358; *Coughlin,* 27 B.R. at 636; *Hospelhorn,* 18 B.R. at 398.

Accordingly, the State Court necessarily determined that Debtor knew his representation was false at the time it was made, made the representation absent knowledge of its truth or falsity, or made it under circumstances where Debtor should have known its falsity. *Lengyel v. Lint,* 167 W.Va. 272, 277, 280 S.E.2d 66 (1981). Whichever scenario the State Court held Debtor's statement was made under, it was the equivalent of holding that Debtor knew his statement was false when it was made. For these reasons, the Court holds that Debtor is collaterally estopped from litigating the element under section 523 that requires that the representation be made with knowledge that it was false at the time it was made.

The final issue is whether Debtor made the false representation with the intent to deceive Plaintiff. As held, the statement was made under one of three scenarios: It was made with knowledge that it was false, with reckless disregard for its truth or falsity, or when Debtor should have known of its falsity. The Court holds that the requirement that the statement be made with intent to deceive is satisfied where the statement was made with knowledge that it is false, where the statement was made with reckless disregard for its truth or falsity, or where made under circumstances where the maker should have known of its falsity. *First Nat'l Bk. v. Kimzey (In re Kimzey),* 761 F.2d 421, 423 (7th Cir.1985) (citing cases); *AG Credit v. Walton (In re Walton),* 158 B.R. 948, 954 (Bankr.N.D.Ohio 1993) (citing cases); *Dawley v. Gould (In re Gould),* 73 B.R. 225, 227 (Bankr.N.D.N.Y.1987) (citing cases); *Avco Fin. Serv. v. Lesher (In re Lesher),* 80 B.R. 121, 124 (Bankr.E.D.Ark.1987) (citing cases). This is equivalent to West Virginia law:

Whether one made a representation with intent to deceive is determined from the facts and circumstances surrounding the case under consideration. Denial of such intent by the party charged therewith is not controlling and will even be disregarded if the factual situation clearly shows the contrary. A wilfully false representation is presumed from the circumstances of the transaction and the situation of the parties and fraudulent intent may be imputed or inferred. This is on the theory that one must be presumed to have intended the necessary consequences of his own voluntary acts. *Degner v. Moncel,* 6 Wis.2d 163 [93 N.W.2d 857] (1959); *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81 [3 S.Ct. 507, 28 L.Ed. 76] (1884). Where a false statement, in its nature calculated to defraud, is made with knowledge of its falsity, intent will be inferred. *Polley v. Boehck Equip. Co.,* 273 Wis. 432 [78 N.W.2d 737] (1956); 23 Am.Jur., Fraud & Deceit, § 119.... If a false representation was knowingly made to induce the plaintiff to make this loan, then intent to deceive must be presumed.... One must be presumed to have intended the necessary consequences of his own voluntary acts. Therefore, the court should have found the existence of intent to deceive as a matter of law and should not have submitted this question to the jury.

*Beneficial Fin. Co. v. Collins,* 150 W.Va. 655, 666–67, 149 S.E.2d 221 (1966). We accordingly hold that Debtor is collaterally estopped from litigating whether his misrepresentation was made with intent to deceive.

For all the reasons given, the Court holds that the issues previously decided by the State Court are equivalent to the issues before this Court. All elements of the test to determine that Debtor's obligation is nondischargeable have been satisfied, and should Plaintiff prevail upon the final issue addressed next, Debtor will be collaterally estopped from relitigating any of them.

Debtor's only other argument is premised upon the forth prong of the collateral estoppel test which requires that determination of the issue in the prior proceeding was essen-

tial to the prior judgment. *E.g., Montana v. United States*, 440 U.S. 147, 152, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); RESTATEMENT 2D JUDG. § 68)); *Arndt v. Hanna (In re Hanna)*, 163 B.R. 918, 924 (Bankr.E.D.N.Y.1994) (citations omitted).

As stated, the State Court found against Debtor on both Plaintiff's counts of common law fraud and breach of contract. (*Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), Order dated April 29, 1991, ¶ 2 (Ashworth, J.)) Debtor argues that the State Court's finding of fraud was not essential once the State Court found that Debtor breached his contract with Plaintiff by failing to tender the Omni Health stock and the agreed cash portion of the purchase price. Debtor argues that "no determination of fraud was necessary in order for the [State Court] to render its judgment." (Debtor's Memorandum of Law at 11.) Debtor contends that the State Court's order was reached with complete disregard to the fraud claim, and for this reason collateral estoppel cannot be applied. (*Id.* (citing *Gualtieri v. Goux (In re Goux)*, 72 B.R. 355, 358 (N.D.N.Y.1987)).) [10]

■ The Second Circuit Court of Appeals has given a rather simple rule to ascertain whether preclusive effect may be given to either of the alternative grounds upon which a judgment may be rendered:

> 'Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.'

*Winters v. Levine*, 574 F.2d 46, 67 (2d Cir. 1978) (quoting RESTATEMENT OF JUDG. § 68, Comment n (1942), and citing 1B MOORE'S FED.PRAC. ¶ 0.433, at 3921–22 (1965); *MacAffer v. Boston & M.R.R.*, 268 N.Y. 400, 403, 197 N.E. 328 (1935); *Sheldon v. Edwards*, 35 N.Y. 279, 286–89 (1935); RESTATEMENT OF JUDG. § 69, Comment b (1942); *id.* § 49, Comment c; *Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977)).

Circuit Judge Friendly also wrote on this issue, guiding how to determine whether a court can safely give collateral estoppel effect to a judgment rendered upon alternative procedural and substantive grounds:

> The concern that an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues is a real one in some circumstances, but not ... where [the prior court] had the substantive issue fully briefed, and discussed its factual basis at length in [its] opinion.

*Williams v. Ward*, 556 F.2d 1143, 1154 (2d Cir.1977) (citations omitted).

In the instant case, the State Court heard testimony during two days of trial (creating a transcript in excess of 450 pages) and counsel argued over Plaintiff's complaint in which he alleged that Debtor committed fraud. The State Court's opinion discussed Debtor's fraudulent misrepresentations at length and in very certain terms wrote that the evidence was "clear and convincing that ... the 85,000 shares of Omni Health Systems, Inc. stock ... was not worth $300,000 ... as represented by [Debtor]." (*Page v. Carozza*, Civ.Act. No. 87–C–967 (Cir.Ct., Raleigh Cty., W.Va.), decision dated April 22, 1991, at 12 (Ashworth, J.)) The State Court's judicial opinion was based upon matters litigated as alternative grounds for relief, and Debtor has not alleged that it had less than a full and fair opportunity to litigate the issues. We hold that the requirements of *Winters* and *Williams* have been met and that the determination that Debtor was liable for common

---

**10.** Debtor's only authority for this proposition is his citation to the *Goux* case. The only benefit *Goux* serves Debtor is that it stated the relevant element of the test for collateral estoppel which is that the prior court's "determination must have been essential to the prior judgment." *Goux*, 72 B.R. at 358. But in *Goux*, the debtor was *held to be collaterally estopped* from arguing factual issues in connection with a criminal proceeding to which the debtor had plead guilty. This does not support Debtor's argument. Moreover, there was no discussion of the collateral estoppel effect of a judgment rendered upon multiple theories, nor was there guidance provided on the method of resolving whether a prior court's determination was essential to its judgment.

law fraud was necessary to the State Court's judgment.

Finally, we must clarify that the State Court ruling did not actually rest upon more than one independent alternative ground, as Debtor attempts to argue. A judgment which does so contains one conclusion premised upon its determination of multiple issues. For example, in a contract for the sale and delivery of goods, a court may hold that a defendant breached the contract for *both* delivering the wrong goods and for delivering these goods to the wrong destination. The single judgment is that defendant breached the contract, and it was premised upon the court's resolution of two issues. But the court could have reached its judgment by resolution of either issue alone. If determination of either issue becomes part of a later litigation, the question would be whether determination of *both* issues was necessary to the prior court's judgment.

An example is *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir.1970). There, Evelyn Halpern contested an involuntary petition of bankruptcy filed against her. A court declared that she was bankrupt on three alternative and separate statutory grounds, and that opinion was affirmed by the Second Circuit Court of Appeals, without opinion. The trustee in bankruptcy sought to use the determinations made by the trial judge as a basis for opposing Halpern's discharge and argued that she was collaterally estopped from rearguing the issues there decided. To prevail in opposition to discharge, the trustee had to establish that the debtor committed a certain act with intent to hinder, delay, or defraud creditors. The referee in bankruptcy ruled for the trustee and denied discharge, and the district court affirmed the referee's order. Debtor appealed. In its decision, the court of appeals noted that of the initial court's three legal bases for declaring Halpern a bankrupt, only one required a finding of actual intent. If the court were to have declared Halpern a bankrupt on that issue alone, it would have been necessarily decided. But since the court made other findings which lead to the same conclusion, it was not possible to state which of the three was actually necessary to the court's judg-

ment. It was possible, therefore, that the finding that debtor had acted with intent to hinder, delay or defraud her creditors was not essential to the prior court's judgment. The Second Circuit wrote:

It is well established that although an issue was fully litigated and a finding on the issue was made in the prior litigation, the prior judgment will not foreclose reconsideration of the same issue if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment.

*Halpern v. Schwartz*, 426 F.2d 102, 105 (2d Cir.1970) (many citations omitted).

The key point is that the initial finding that Halpern was a bankrupt was a discreet finding premised upon multiple grounds. Certain of these multiple grounds may not have been necessary to that finding. In the instant case, there exists no analogous single finding based upon alternative grounds. The State Court made several discreet final findings for Plaintiff on causes of action brought under blue sky laws, securities laws, the Uniform Commercial Code, and for common law fraud and breach of contract. But none of the rulings was itself premised upon alternative grounds. A *Halpern*-type judgment is not present in this case and therefore Debtor's argument in this regard is misplaced.

For all the reasons set forth, the Court holds that Plaintiff's motion for summary judgment must be granted:

A motion for summary judgment will be denied 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'

*Arndt v. Hanna* (*In re Hanna*), 163 B.R. 918, 922 (Bankr.E.D.N.Y.1994) (quoting *CPY Co. v. Ameriscribe Corp.* (*In re Chas P. Young Co.*), 145 B.R. 131, 135–36 (Bankr. S.D.N.Y.1992), *appeal decided by Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988), (quoting *Richardson v. Combs* (*In re Fred Combs*), 40 B.R. 148, 151 (Bankr.W.D.Va. 1984))). There is no need for trial in this case. All elements required for a determination that Debtor's obligation pursuant to the

State Court's judgment is non-dischargeable have been decided, with collateral estoppel effect, and Plaintiff is entitled to judgment as a matter of law. There exists no triable issue of fact. Fed.R.Civ.P. 56(c) (1994) (made applicable by Fed.R.Bankr.P. 7056 (1994)).

Accordingly, Plaintiff's motion for summary judgment is GRANTED, the obligation owed Plaintiff by Debtor is determined to be NON–DISCHARGEABLE; Debtor's motion for dismissal is DENIED. Plaintiff has leave to have a MONEY JUDGMENT signed by the Court on May 31, 1994, with seven days notice to Debtor by notice of presentment.

**SO ORDERED, DECREED AND ADJUDGED.**